IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CHAD COX and COURTNEY COX, Individually and as Natural Guardians of JEREMIAH COX,<br><br>Plaintiffs,<br><br>vs.<br><br>KLS MARTIN, L.P.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 10-1204-CV-W-ODS<br>)<br>)<br>)<br>) |

<u>ORDER AND OPINION (1) DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; (2) DENYING DEFENDANT'S MOTION FOR NEW TRIAL; AND (3) DENYING DEFENDANT'S MOTION FOR REMITTITUR</u>

Following a jury trial and entry of an adverse judgment, Defendant KLS Martin, L.P., filed a Renewed Motion for Judgment as a Matter of Law (Doc. 166), Motion for New Trial (Doc. 164), and Motion for Remittitur (Doc. 162). For the following reasons, the Motions are denied.

I. BACKGROUND

Plaintiff Jeremiah Cox was born with a severe case of Pierre Robins Sequence, a rare disorder in which the infant's lower jaw is underdeveloped. Virender K. Singhal, M.D., performed a bilateral mandibular distraction procedure to correct the disorder.

Mandibular distraction involves performing osteotomies (cutting through the bone) on both sides of the patient's mandible behind the molars and securing a mechanical intraoral distraction device to both sides of each osteotomy site. The distracters are secured by attaching the distractors' bone fixation plates to the mandible through the use of bone screws. By turning an activation mechanism, each distractor slowly separates the bone sections. This allows for the formation of new bone in the space created, lengthening the mandible.

The distractor's bone fixation plates (screwed onto the mandible) are attached to a

rectangular post located on the distractor cylinder body through an extremely tight fit (called a "friction fit") and welding. There were two plates on the right side of Jeremiah's mandible—a fixed distal plate and a movable proximal plate. The distraction devices were manufactured by Defendant KLS.

Approximately 9 days after surgery, the distal fixation plate on the right side separated from the distractor body at the post-plate welded connection. Chad and Courtney Cox, as natural guardians of Jeremiah Cox, sued KLS.

On April 18, 2013, the jury returned a verdict for Plaintiffs in the amount of $850,000 on the theories of design defect and failure to warn. Defendant has now filed a renewed Motion for Judgment as a Matter of law, Motion for New Trial, and Motion for Remittitur. The Court will address each in turn.

## II. DISCUSSION

### A, Judgment as a Matter of Law

#### 1. Legal Standard

When considering a motion for judgment as a matter of law, all factual issues are construed in the light most favorable to the verdict. *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 (8th Cir. 2012). The motion should then be granted only if there was no legally sufficient basis for the verdict. *E.g., Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012) (citing Fed. R. Civ. P. 50).

#### 2. Legal Analysis

A strict liability claim under Missouri law requires proof of the following elements: "(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) plaintiff was damaged as a direct result of the defective condition that existed when the product was sold." *Engel v. Corrigan Company- Mechanical Contractors, Inc., a Division of Corrigan Brothers, Inc.*, 148 S.W.3d 28, 30 (Mo. Ct. App. 2004). A product may be "unreasonably

2

Case 4:10-cv-01204-ODS   Document 179   Filed 08/14/13   Page 2 of 17

dangerous" due to its manufacture, its design, or a failure to warn. *Peters v. Johnson & Johnson Products, Inc.*, 783 S.W.2d 442, 444 (Mo. Ct. App. 1990). In this case, Plaintiffs have alleged strict liability claims based on both a design defect and a failure to warn.

<u>a. Unreasonably Dangerous</u>

First, Defendant asserts that judgment as a matter of law is appropriate because Plaintiffs failed to present evidence that the device was unreasonably dangerous. The Court disagrees.

The Missouri Supreme Court has held that "[u]nder our model of strict tort liability the concept of unreasonably danger [sic], which is determinative of whether a product is defective in a design case, is presented to the jury as an ultimate issues without further discussion." *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 378 (Mo. 1986) (en banc). "The jury gives this concept content by applying their collective intelligence and experience to the broad evidentiary spectrum of facts and circumstances presented by the parties." *Id.*

In this case, Defendant argues there was no evidence presented to the jury that the device was unreasonably dangerous because Dr. Dobbs' testimony was inadmissible. The Court rejected this argument in denying KLS' pre-trial motion to strike Dr. Dobb's testimony, Doc.76, pp. 3-8, and again declined to strike Dr. Dobb's testimony at the close of the parties' evidence. Tr. Vol. IV (Doc. 157), 683:1-6. The Court discerns no reason to change this ruling.[1] Defendant tried to convince the jury the device was not unreasonably dangerous because (1) its benefit outweighed the risk, (2) there was a low medical device incident rate, (3) and there was no permanent injury, lengthy recovery, severe pain, or risk of life or limb. However, the jury rejected those arguments and was permitted to do so. Although there was evidence to support Defendant's position that the device was not unreasonably dangerous, there was also evidence to the contrary—the device broke, caused a second surgery, and prolonged the

---

[1] Defendant also argues that the strict liability failure to warn claim fails for lack of admissible evidence of a design defect because Dr. Dobb's testimony is inadmissible. Once again, Defendant's argument is not new and the Court adheres to its prior ruling.

3

lengthy and painful distraction process—and a legitimate factual dispute should not be resolved as a matter of law.  E.g., *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002).

### b. Adequacy of the Warning

Next, Defendant argues the strict liability failure to warn claim fails for lack of competent evidence concerning the adequacy of the warning.   Specifically, Defendant faults Plaintiffs for not presenting testimony of a physician or other qualified expert regarding whether the warning provided by KLS in the product brochure was adequate to inform a skilled physician of the risk that the device might be damaged if care was not taken during the manipulation process.   Defendant contends that under Missouri law, a failure to warn claim requires admissible expert testimony that additional or other warnings might have altered the behavior of the plaintiff.   (Doc. 167), at 18.   Defendants cite to *Davidson v. Besser Co.*, 70 F. Supp. 2d 1020, 1023 (E.D. Mo. 1999), in which the court stated "[a] failure to warn claim requires admissible expert testimony that additional or other warnings might have altered the behavior of the plaintiff."   However, as Plaintiffs correctly point out, the *Davidson* decision merely applies the rule—that expert testimony is required—in cases involving complex issues outside the common knowledge of jurors:

> . . . Whether or not the defendant's block-making machine was unreasonably dangerous, because it lacked an interlock safety device, is a conclusion that is *sufficiently technical and complex to be outside the common knowledge or experience of a jury; expert testimony is necessary to establish liability in such a case.*   Because the Court has prohibited Mr. Kelsey from testifying that the block-making machine was defective without the interlock safety device, plaintiff's case lacks legally sufficient evidence on those claims and defendant is entitled to summary judgment on them.
> Plaintiff's claims based upon insufficient warnings *are subject to the same principles*.   A failure to warn claim requires admissible expert testimony that additional or other warnings might have altered the behavior of the plaintiff.   *Jaurequi* [*v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999).] . . .

70 F. Supp. 2d at 1023 (footnote omitted) (citations omitted) (emphasis added).

Under Missouri law, expert testimony is not required in *all* failure to warn claims.

4

"The necessity of expert testimony in a failure to warn claim turns on the complexity of the subject matter." *Menz v. New Holland North America, Inc.*, 507 F.3d 1107, 1111 (applying Missouri law). *See also American Auto Ins. Co. v. Omega Flex, Inc.*, No. 4:11-DV-00305-AGF, 2013 WL 2628658 (E.D. Mo. June 11, 2013) ("*[I]n a case such as this, involving technical and complex processes whose properties are outside the common knowledge or experience of a jury*, '[a] failure to warn claim requires admissible expert testimony that additional or other warnings might have altered the behavior of the plaintiff.'" (quoting *Davidson v. Besser Co.*, 70 F. Sup. 2d 1020, 1023 (E.D. Mo. 1999)); *Bryant v. Laiko Int'l Co.*, No. 1:05-CV-000161-ERW (E.D. Mo. Sept. 26, 2006) ("On both the question of design, and failure to warn, Missouri courts have always allowed, and often required expert testimony. Whether courts have held expert testimony is required usually turns on the complexity of the subject matter, or whether the circumstances clearly show that the incident could not have occurred absent a defect."). Further, "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (quoting *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998)).

In this case, the jury heard testimony from Dr. Dobbs, Mr. Waizenegger, and Dr. Singhal regarding the properties and use of the device. The jury also heard testimony regarding KLS' product brochure, which set out KLS' instructions for using the device. Dr. Singhal also testified regarding KLS' warning and instructions. Finally, Dr. Singhal testified that he knew of and heeded KLS' warning regarding the danger of damage to the device during the bending procedure, but was never instructed of such danger during the cutting process. No further expert testimony was required in this case. The jury was capable of determining whether KLS' warning was adequate to inform Dr. Singhal that the device may be damaged if care was not taken during the manipulation process.

### c. Causation

Defendant contends Plaintiffs did not present sufficient evidence on the strict liability failure to warn claim to support the jury's verdict on the issue of causation.

5

To prevail on a strict liability failure to warn claim, a plaintiff must (1) establish that the lack of an adequate warning caused the plaintiff's injuries; and (2) demonstrate that a warning would have altered the behavior of the injured person. *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 785 (Mo. Ct. App. W.D. 2008). Defendant attacks the second component. There is a presumption that a warning would be heeded, *if* there is evidence that a plaintiff did not already know of the danger. *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 14 (Mo. 1994) (en banc). However, "[i]t is not enough for the defendant to show that the plaintiff knew of the *general* dangers associated with the activity; rather the defendant must show that the plaintiff knew of the *specific* danger that caused the injury." *Smith*, 275 S.W.3d at 785 (emphasis added).

Defendant argues that Dr. Singhal knew about the specific risk of bending the post-plate connection of the device and therefore the presumption that the warning would have been heeded by Dr. Singhal was rebutted. In response to a question regarding the instructions in the product insert, Dr. Singhal stated:

> A: Here I said, "Yes. They have told us from the very beginning that if you bend a plate excessively, you would break them or snap them off, so we are very aware of it."
>
> Q: So you knew not to bend the plate excessively on such a small distractor?
>
> A: That's true.

Tr. Vol. II (Doc. 155), 344:20-25. However, Plaintiff argues, Dr. Singhal was testifying specifically in reference to the "Caution" contained in the product insert at Step 6 of the instructions:

> 6) The micro plates can be bent to ensure good bone contact. * CAUTION: extreme care must be taken to protect the welds during the bending procedure. Place one plate bender (25-486-13) next to weld and use other bender to modify the plate.

Plaintiff's Exhibit 6. Dr. Singhal may have been aware of the *general* danger to the device—that the welds could break or snap off if the plates were bending excessively during the *bending* procedure before implantation—but the testimony does not

6

demonstrate that Dr. Singhal was clearly aware of the *specific* danger that the welds could fail *after* implantation if the plates were *inadvertently* bent during the *cutting* procedure. The Court finds as a matter of law that Plaintiffs presented sufficient evidence to support the jury's verdict. Further, the Court sufficiently addressed this argument in its Order (Doc. 77), p. 3, and the Court's ruling stands.

### d. Dr. Singhal's Use of the Device

Next, Defendant argues the strict liability claim fails because there was no evidence that Dr. Singhal used the device properly. The Court addressed this issue before trial and adheres to its ruling. The Court stated, "the warnings and instructions were not clear" and "even if Dr. Singhal misused the device by bending the distal bone plate without plate benders during the cutting procedure, a reasonable jury could conclude this misuse was objectively foreseeable to KLS in light of the instructions in the brochure (only warning to protect the weld during the bending procedure), the presence of a KLS representative during every or most of Dr. Singhal's surgeries, and Dr. Singhal's testimony that he followed the same sequence in modifying the device during every surgery." Doc. 77, p. 4.

### e. Economic Damages

Finally, Defendant contends that Plaintiffs failed to present submissible evidence concerning the amount of economic damages resulting from the separation and replacement of the device. As a preliminary matter, there is no basis for determining what amount, if any, the jury included for economic damages in its award. In awarding damage, the jury was instructed as follows: "In considering the amount of damages, you may consider the costs for medical care as well as the pain and suffering experienced by Jeremiah Cox." *See* Doc. 150, p. 18. In accordance with this instruction, the jury awarded $850,000 to Plaintiffs. Neither the jury's instruction nor the verdict form itemized the economic and non-economic damages encompassed in the award.

In this case, the total amount of medical expenses incurred by Jeremiah from June 15th to June 29th was $87,393.55. Tr. Vol. I (Doc. 154), 128:9-141:5. Dr. Singhal

testified that all of the expenses incurred were medically necessary.  Tr. Vol. II, 315:9-13. Dr. Singhal also testified that the device's failure extended Jeremiah's hospital stay, extended the distraction process, and required an additional surgery to be performed on J.C.  Tr. Vol. II, 315:14-316:5, 317:15-19.  The Court concludes that Plaintiffs presented competent evidence that (1) all the medical expenses incurred by Jeremiah during his hospital stay were medically necessary and (2) J.C.'s hospital stay was extended (and additional treatment was required) as a result of KLS' device failing.  Defendant's renewed Motion for Judgment as a Matter of Law is denied in its entirety.

### B. New Trial

A new trial may be granted when the first trial results in a miscarriage of justice, either because (1) the verdict is against the weight of the evidence, (2) the damage award is excessive, or (3) legal errors occurred during the trial.  *E.g.*, *Trickey v. Kaman Indus. Tech. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013).  In determining whether a verdict is against the weight of the evidence, the Court may rely on its own interpretation of the evidence but cannot set aside the jury's verdict simply because the Court believes other outcomes are more appropriate.  *Harris v. Secretary, U.S. Dep't of Army*, 119 F.3d 1313, 1318 (8th Cir. 1997).

### 1. Liability

First, in its Motion for New Trial, Defendant argues that the jury's verdict as to liability is against the weight of the evidence because (1) the device was not unreasonably dangerous; (2) the device was not defectively designed; (3) Plaintiffs failed to establish causation on the failure to warn claim; and (4) Dr. Singhal's misuse of the device was not reasonably anticipated.  These arguments have already been addressed and rejected when discussing Defendant's Motion for Judgment as a Matter of Law and the Court will not engage in further discussion.

### 2. Argument and Questioning by Plaintiffs

Next, Defendant argues that Plaintiffs' counsel conducted improper argument and

questioning, which denied KLS a fair trial. The Court disagrees.

### a. Opening Statement

Defendant makes several arguments that comments made during Plaintiffs' opening statement were improper. The grounds asserted for objecting to Plaintiffs' opening statement were apparent at the time the opening statement was delivered; thus, Defendant's failure to object during the opening statement waives the issue on appeal, *see McKnight*, 36 F.3d 1396, 1408 (1994), unless the Court committed plain error in allowing the commentary in Plaintiffs' opening statement.

Under plain error review, the Eight Circuit will only reverse if there is "1) error 2) that is plain and 3) affects the defendant's substantial rights" and, "[i]n addition, the error must seriously affect 'the fairness, integrity or public reputation of public proceedings.'" *United States v. Robinson*, 439 F.3d 777, 780 (8th Cir. 2006) (quoting *United States v. Olano*, 507 U.S 725, 732 (1993)). In order to "affect substantial rights," "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 705 U.S. at 734-35.

In this case, Defendant argues Plaintiffs' counsel improperly referenced the emotions that Chad and Courtney Cox felt prior to Jeremiah's first surgery: "worry," "very raw," "fear," "dread," "longing for normalcy." Any possible effect on the jury was directly addressed by the Court's use of Jury Instruction No. 16, stating that "[a]ny evidence of Chad and Courtney Cox's emotional distress is withdrawn from the case and you are not to consider such evidence in arriving at your verdict." Doc. 150.

Next, Defendant argues that it Plaintiff's opening statement included gruesome details regarding the surgery. The passages Defendant quotes are not particularly gruesome,[2] and an accurate description of the surgery was relevant in this case.

Defendant also argues that Plaintiffs' counsel tainted the jury by improperly mentioning that Jeremiah had "other" health problems. The Court disagrees. Jeremiah's Pierre Robins Sequence caused him to have the device implants and was

---

[2] Tr. Vol. I, 66:17-67:2; Tr. Vol. I, 68:24-69:5; Tr. Vol. I, 69:19-24

9

relevant to the case.

Finally, Defendant argues that Plaintiff improperly suggested that KLS should have sued Dr. Singhal and Children's Mercy. Plaintiffs' attorney stated:

> There are only two parties to this case. The Coxes have not sued Children's Mercy, nor have they sued Dr. Singhal. They've not received any settlement from either of those two parties, and KLS has not added Dr. Singhal or Children's Mercy to this lawsuit.

Tr. Vol. I, p. 72, ln. 6-9. The Court finds that no such suggestion was made, and even if it was, it did not deny KLS a fair trial. The Court concludes that the comments in Plaintiffs' opening statement did not seriously affect the fairness or integrity of the trial and thus did not constitute plain error.

### b. Plaintiffs' Counsel's Questioning

The Court rejects Defendant's arguments that Plaintiffs' counsel's questioning poisoned the jury against KLS. First, Defendant objects to counsel's questioning of Jeremiah's parents about how they felt at the time of their son's surgery. This argument is similar to the argument Defendants made regarding Plaintiffs' opening statement and the argument has been rejected—any possible effect on the jury was directly addressed by the Court's use of Jury Instruction No. 16.

Next, Defendant argues Plaintiff should not have inquired from various witnesses whether KLS had ever contacted Dr. Singhal after the surgery to inform him that he had damaged the device. The Court addressed this argument during the trial and ruled that the evidence was relevant. Tr. Vol.. II, p. 313, ln. 2-16. The Court adheres to its prior ruling.

Defendant's next argument involves questions as to whether KLS had contacted the Plaintiffs to check on Jeremiah, or to apologize to the Plaintiffs for what happened. Defendant did not object to this questioning at trial and the Court finds no plain error. Tr. I, 119:5-13, 241:4-9.

Next, Defendant argues that Plaintiffs' counsel improperly insinuated that KLS tampered with evidence, falsified reports, and hid evidence. Doc. 165, p. 14. The Court

10

does not find that the line of questioning cited by Defendant poisoned the jury. Plaintiffs contend the questioning—asking about the chain of custody, asking about the existence of documents—does not imply evidence tampering. The Court agrees. With respect to the existence of emails, Plaintiffs argue that those questions informed the jury why certain types of potential evidence were not presented for its consideration. Plaintiffs argue, and the Court agrees, that if the jury found it remarkable that KLS' chief device designer does not communicate with his co-workers via email, then they were free to consider that fact in judging the credibility of that witness.

Finally, Defendant argues Plaintiffs improperly suggested that the jury could hold KLS liable for not sharpening the plate cutters at Children's Mercy. Defendant contends that the questions regarding the plate cutters supplied by KLS were irrelevant. However, Plaintiffs correctly point out that the type and condition of instruments provided by KLS is relevant to the unreasonably dangerous nature of the device intended to be modified, and to the issue of whether the device was used in a manner that was reasonably anticipated by KLS. The Court denies Defendant's Motion for a New Trial with respect to Plaintiffs' counsel's questioning.

### c. Plaintiffs' Counsel's Purported Abuse of Witnesses

Next, Defendant contends Plaintiffs' counsel "repeatedly engaged in a degree of theatrics that was prejudicial to KLS' ability to receive a fair trial." Doc. 165, p. 15. Specifically, Defendant argues "Mr. Bartle frequently shouted at witnesses, made dramatic gestures with his body, and paced in front of the jury box." *Id.* Plaintiffs' counsel's conduct does not rise to the level of prejudicing the jury against Defendant and a new trial is not warranted. The Court sustained defense counsel's objections during the trial and gave Plaintiffs' counsel curative instructions. *See* Tr. Vol. I, 209:22-24; Tr. II, 287:24-25-288:1; Tr. III, 457:20-22.

### d. Plaintiffs' Closing Argument

Finally, Defendant argues that Plaintiffs' closing argument contained improper

11

Case 4:10-cv-01204-ODS   Document 179   Filed 08/14/13   Page 11 of 17

argument because Plaintiffs' counsel: (1) made an "empty chair" argument, (2) made a reference that KLS did not accept responsibility, (3) argued that KLS' failed to tell Dr. Singhal that he damaged the device, (4) implied that the plate cutters were not maintained properly, (5) referenced a lack of emails of the design of the product and implied that KLS falsified its MRD reports, and (6) told the jury that KLS can afford an adverse verdict. Defense counsel failed to object to the comments during Plaintiffs' closing argument, which means a new trial is not justified in the absence of plain error. *See United States v. Lawson*, 483 F.2d 535, 538 (8th Cir. 1973); *see also Thomure v. Truck Ins. Exch.*, 781 F.2d 141, 143 (8th Cir. 1986) ("When statements in a closing argument are not objected to at trial, we may only review them on a plain error standard.").

In this case, none of the comments made by Plaintiffs' counsel during closing argument were "plainly unwarranted and clearly injurious." *Billingsley v. City of Omaha*, 277 F.3d 990, 997 (8th Cir. 2002) (quoting *Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir. 1986)) ("A new trial should be granted where the improper conduct of counsel in closing argument are 'plainly unwarranted and clearly injurious.'"). Moreover, the Court admonished the jury—at the beginning of trial and prior to the closing arguments—that statements made by the attorneys are not evidence. The admonition remedied any prejudice incurred by Plaintiffs' counsel's statements in closing argument. *See Billingsley*, 277 F.3d at 997. Accordingly, the statements made by Plaintiffs' counsel during closing argument do not warrant a new trial.

### 3. Request of Damages in the Initial Closing Argument

Defendant contends a new trial on the issue of damages is warranted because Plaintiffs' counsel did not mention damages in the initial portion of his closing argument. Under Missouri law, "when a plaintiff does not raise the issue of damages in the opening portion of closing argument, he cannot address that issue in the rebuttal portion of his argument." *Shapiro v. Kravitz*, 754 S.W.2d 44, 454 (Mo. Ct. App. 1988).

In this case, Plaintiffs' counsel concluded his opening portion of closing argument and reserved the rest of his time. Before Defendant's counsel delivered his closing

argument, the following bench conference was held:

> MR. LUNNY:   My understanding of Missouri law is if they claim damages, they are [required] to inject that damage amount in the beginning of their closing argument.   Their rebuttal section is allowed to be preserved purely for rebuttal of what KLS would present.   So if that is the Court's ruling, I'm asking the Court if it would follow Missouri law in that case, I won't talk about damages, because they are not entitled to provide economic damages suffered to the jury because he failed to do that in his closing.
>
> MR. BARTLE:   I don't know if there is such a rule.   I have one minute left in my first half of my remarks, and I can certainly tell the jury.
>
> THE COURT:   I understand Greg correctly stated the law in Missouri.   If you don't talk about damages in the first part giving him an opportunity to rebut that argument in his part, then you can't talk about it in the final part.
>
> MR. BARTLE:   Can I use my one minute, Judge?
>
> MR. LUNNY:   He finished his initial presentation.
>
> MR. BARTLE:   I have one minute left.
>
> THE COURT:   All right.   I'm going to let him do it because I want justice to happen in this courtroom and I think that you should have and I'll give you the opportunity to do that now and you can rebut it.

Tr. Vol. IV, p. 691.   Plaintiffs' counsel then finished the remaining portion of his initial closing argument, which was followed by defense counsel's closing argument.   The Court concludes that the Plaintiffs' counsel complied with the Missouri rule that a plaintiff cannot raise an issue for the first time in the rebuttal.   Before Defendant's counsel commenced his closing argument, Plaintiffs' counsel addressed the issue of damages.

4. Venireperson #12

Defendant argues that venireperson # 12, Alisa Woska, should have been stricken for cause because of her inability to be impartial.

"The district court is given broad discretion in determining whether to strike jurors for cause because it is in the best position to assess the demeanor and credibility of the prospective jurors."   *U.S. v. Elliot*, 89 F.3d 1360, 1365 (8th Cir. 1996).

13

In this case, during voir dire Ms. Woska initially said she felt she may take Plaintiffs' side because she has a child and because she can be very sympathetic. However, she also said she could be fair. The Court followed up and asked Ms. Woska whether she could follow the instructions and the law that would require her to come to a verdict based solely on the evidence, common sense, and the laws, and would not allow her sympathies or own likes and dislikes influence her. Tr. Vol. I, 53:8-14. Ms. Woska answered in the affirmative. The undersigned evaluated Ms. Woska's credibility and concluded she would be able to set aside any prejudices or sympathies. Defendant has failed to meet its burden of proving impartiality. Accordingly, Plaintiff's motion for new trial is denied with respect to Ms. Woska's impartiality. *See United States v. Wright*, 340 F.3d 724, 733 (8th Cir. 2003) (affirming district court's refusal to strike juror for cause when juror expressed initial doubt over her ability to follow the court's instructions before eventually stating that she could decide the case fairly and impartially).

### 5. Learned Intermediary Defense

Defendant contends the Court "refused" to give Defendant's instruction on the learned intermediary defense and Defendant was "forced" to abandon the defense. Doc. 165, p. 25. During a discussion outside of the presence of the jury, the Court proposed a re-drafted version of the learned intermediary defense instruction because the Court believed the proposed instruction was very confusing, difficult to read, difficult to follow, and too fact intensive to use as an instruction for the jury. Tr. Vol. III (Doc. 156), 450:5-8. Then, Defendant's counsel stated "If the Court is inclined to give No. 16, then we'll have to discuss this because, frankly, we might just decide not to do it at all . . . ." Tr. Vol. III, 451:1-5. The Court allowed defense counsel to think about it overnight. Tr. Vol. III, 603:10-17. The following morning defense counsel informed the Court that the decision was made to drop the learned intermediary defense. Tr. IV, 606:7-9. In no way was Defendant "forced" to abandon the learned intermediary defense. Defendant's proposed instruction was confusing and the Court offered an instruction it believed was clearer for the jury to understand; at that point, Defendant opted not to pursue it further.

14

### 6. Verdict Form Reference to Chad and Courtney Cox

Defendant complains that Jury Instruction 15 improperly referenced Chad and Courtney Cox. Instruction No. 15 stated:

> If you find in favor of the [sic] Chad and Courtney Cox as natural guardians of Jeremiah Cox on Instruction No. 13 or 14 then you must award such sum as you believe will fairly and justly compensate for any damages you believe were sustained as a direct result of the failure of the distraction device. In considering the amount of damages, you may consider the costs for medical care as well as the pain and suffering experienced by Jeremiah Cox.

Doc. 150, p. 18.

Defendant contends that the damages instruction does not state that the jury may *only* consider the medical expenses and Jeremiah's pain and suffering. Defendant argues that the instruction confused the jury as to the measure of damages recoverable by law and that the jury was not instructed as to the significance of the phrase "as natural guardians of Jeremiah." Defendant's argument is without merit. First, other instructions referenced Chad and Courtney Cox as guardians (*e.g.*, Instruction No. 14), and the jury was instructed that they were suing "on behalf of their child Jeremiah." Doc. 150, p. 1. Further, Instruction 16 stated "[a]ny evidence of Chad and Courtney Cox's emotional distress is withdrawn from the case and you are not to consider such evidence in arriving at your verdict." Doc. 150, p. 19.

### C. Remittitur

Defendant's Motion for Remittitur argues the jury's damage award of $850,000 was grossly excessive. The Court disagrees.

The consideration of a motion for remittitur is within the discretion of the trial court. *Mathieu v. Gopher News Co.*, 273 F.3d 769, 782 (8th Cir. 2001). "Remittitur is appropriate only when the verdict is so grossly excessive as to shock the conscience of the court." *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 931 (8th Cir. 2010). "A verdict is considered grossly excessive when there is a plain injustice or a monstrous

15

or shocking result." *Hudson v. United Sys. of Arkansas, Inc.*, 70 F.3d 700, 705 (8th Cir. 2013).

As to the economic damages in this case, KLS stipulated that all of the medical expenses incurred by Jeremiah from June 15th to June 29th were admissible for all purposes. Doc. 94. The total amount of these expenses was $87,393.55. Tr. I, 128:9-141:4. Dr. Singhal testified that all of these medical expenses were medically necessary. Tr. II, 315:9-13. Further, Dr. Singhal testified that the device's failure extended Jeremiah's hospital stay, extended the distraction process, and required an additional surgery to be performed on Jeremiah. Tr. II, 315:14-316:5, 317:15-19. Dr. Singhal also testified that infants may be released anywhere from 3-10 days following the implantation surgery, which occurred on June 9th. Tr. II, 317:20-25. The device implanted in Jeremiah failed, however, requiring a surgery to replace the broken device on June 19th, and Jeremiah was not released from the hospital until June 30th. Accordingly, Plaintiffs presented evidence that (1) all the medical expenses incurred by Jeremiah during his hospital stay were medically necessary and (2) Jeremiah's hospital stay was extended as a result of the device's failure.

As to the non-economic damages, the Court rejects Defendant's argument that the jury's award of pain and suffering was "grossly excessive" because it was allegedly twenty-eight times the amount of economic damages awarded. In Missouri, "[t]here is no bright-line rule that non-economic damages cannot exceed economic damages by any certain multiplier or that damages are to be determined by an arbitrary mathematical formula." *Evans v. FirstFleet, Inc.*, 345 S.W.3d 297, 304 (Mo. Ct. App. 2011) (citation omitted). Defendant describes Jeremiah's pain as "minor" and argues that Jeremiah experienced "very little, if any *additional* pain and suffering" as a result of the device's failure. Doc. 163, pp. 4-5. However, Plaintiffs' presented evidence that Jeremiah's parents' witnessed Jeremiah showing signs of pain and discomfort relating to the device breaking. Tr. I, 108:7-18, 110:10-14, Tr. II, 436:11-13. Dr. Singhal testified that the intubation, bone cutting and turning processes associated with a distraction procedure caused pain to the infant. Tr. II, 360:11-20. The evidence also showed that Jeremiah had to undergo all of these procedures an additional time due to the device's failure. Tr.

16

II, 302:6-303:9, 315:14-23. The jury heard evidence regarding the medical procedures performed on Jeremiah as a result of the device's failure, and the pain associated with those procedures. The jury could have plausibly found that the economic damages and non-economic damages warranted a $850,000 verdict and that award does not shock the Court's conscience.

### III. CONCLUSION

Defendant's Renewed Motion for Judgment as a Matter of Law, Motion for New Trial, and Motion for Remittitur are denied.

IT IS SO ORDERED.

                                          /s/ Ortrie D. Smith
                                          ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 14, 2012                    UNITED STATES DISTRICT COURT